# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued September 24, 2018       Decided June 4, 2019

No. 17-5203

DCH REGIONAL MEDICAL CENTER,
APPELLANT

v.

ALEX MICHAEL AZAR, II, IN HIS OFFICIAL CAPACITY AS
SECRETARY OF HEALTH AND HUMAN SERVICES,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-00212)

---

*Geoffrey M. Raux* argued the cause for appellant. With him on the briefs were *Lori A. Rubin* and *Donald H. Romano*.

*Abby C. Wright*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief were *Jessie K. Liu*, U.S. Attorney, *Alisa B. Klein*, Attorney, *Robert P. Charrow*, General Counsel, U.S. Department of Health and Human Services, *Janice L. Hoffman*, Associate General Counsel, *Susan Maxson Lyons*, Deputy Associate General Counsel, and *Jonathan C. Brumer*, Attorney.

Before: MILLETT and KATSAS, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

2

Opinion for the Court filed by *Circuit Judge* KATSAS.

KATSAS, *Circuit Judge*: The Medicare statute precludes judicial review of estimates used to make certain payments to hospitals for treating low-income patients. We must decide whether this preclusion provision bars challenges to the methodology used to make the estimates.

I

Through Medicare, the federal government pays for health care for elderly and disabled individuals. 42 U.S.C. § 1395 *et seq.* Hospitals receive increased payments if they serve "a significantly disproportionate number of low-income patients." *Id.* § 1395ww(d)(5)(F)(i)(I). These increases are known as "DSH payments," which is shorthand for disproportionate share hospital payments. *Id.* § 1395ww(r).

The payment at issue here is the "additional payment" described in paragraph (2) of section 1395ww(r), which is made annually to each disproportionate share hospital. The payment is the product of three statutory "factors" estimated by the Secretary of Health and Human Services. The third factor measures an individual hospital's share of all nationwide uncompensated care. It is the quotient of two amounts:

> (i) the amount of uncompensated care for such hospital for a period selected by the Secretary (as estimated by the Secretary, based on appropriate data (including, in the case where the Secretary determines that alternative data is available which is a better proxy for the costs of [DSHs] for treating the uninsured, the use of such alternative data)); and

> (ii) the aggregate amount of uncompensated care for all [DSHs] that receive a payment under this

subsection for such period (as so estimated, based on such data).

42 U.S.C. § 1395ww(r)(2)(C).

Congress precluded judicial review of the estimates of the three statutory factors. Specifically, it provided that "[t]here shall be no administrative or judicial review under section 1395ff of this title, section 1395*oo* of this title, or otherwise" of "[a]ny estimate of the Secretary for purposes of determining the factors described in paragraph (2)." 42 U.S.C. § 1395ww(r)(3)(A). Congress also precluded administrative and judicial review of "[a]ny period selected by the Secretary for such purposes." *Id.* § 1395ww(r)(3)(B).

In 2013, HHS promulgated a rule setting forth the "data sources and methodologies for computing" the three factors for fiscal year 2014. 78 Fed. Reg. 50,496, 50,627 (Aug. 19, 2013) (*FY 2014 Rule*). HHS decided to use data from 2010 or 2011, as provided on hospitals' then-most recent Medicare cost reports. *Id.* at 50,640. In the regulatory preamble, HHS stated that, "in the case of a merger between two hospitals" during that time, "Factor 3 will be calculated based on the [data] under the surviving [hospital's certification number]." *Id.* at 50,642.

Plaintiff DCH Regional Medical Center merged with Northport Regional Medical Center on May 1, 2011. The merged entity operated under DCH's name and certification number. Consistent with the preamble, it received a DSH payment for fiscal year 2014 based on DCH's share of uncompensated care, but not Northport's.

DCH filed an appeal with the Provider Reimbursement Review Board, which denied relief on the ground that section 1395ww(r)(3) barred administrative review.

4

DCH then sued. It sought to challenge "the methodology adopted and employed" by HHS to calculate the third factor bearing on its DSH additional payment. J.A. 5. DCH requested vacatur of "the Secretary's Fiscal Year 2014 Factor 3 calculation for Plaintiff," as well as an order compelling the Secretary "to recalculate the Fiscal Year 2014 disproportionate share adjustment owed to Plaintiff through application of a methodology for determining Factor 3 that considers data associated with both the surviving and non-surviving hospitals that underwent a merger." J.A. 20.

The district court held that section 1395ww(r)(3) barred judicial review of DCH's claims, so it dismissed the case for lack of jurisdiction. *DCH Reg'l Med. Ctr. v. Price*, 257 F. Supp. 3d 91 (D.D.C. 2017). We review that decision de novo. *Am. Hosp. Ass'n v. Azar*, 895 F.3d 822, 825 (D.C. Cir. 2018).

II

By its terms, section 1395ww(r)(3)(A) provides that "[t]here shall be no administrative or judicial review" of "[a]ny estimate of the Secretary for purposes of determining the factors described" in section 1395ww(r)(2). DCH concedes that this preclusion provision bars review of the *estimates* used by the Secretary to make the DSH additional payments under section 1395ww(r)(2). Yet DCH contends that the provision does not bar review of the *methodology* used to make the estimates. We disagree.

A

Although we "presume" that agency action is judicially reviewable, "that presumption, like all presumptions used in interpreting statutes, may be overcome by specific language that is a reliable indicator of congressional intent." *Knapp Med. Ctr. v. Hargan*, 875 F.3d 1125, 1128 (D.C. Cir. 2017)

(cleaned up). When Congress provides that "there shall be no administrative or judicial review" of specified agency actions, 42 U.S.C. § 1395nn(i)(3)(I), its intent to bar review is clear, so we determine only whether the challenged action falls "within the preclusive scope" of the statute, *Knapp Med. Ctr.*, 875 F.3d at 1128. Here, Congress has barred review of "[a]ny estimate" used by the Secretary to calculate a DSH additional payment. 42 U.S.C. § 1395ww(r)(3)(A).

In this statutory scheme, a challenge to the methodology for estimating uncompensated care is unavoidably a challenge to the estimates themselves. The statute draws no distinction between the two. Instead, it simply provides for payments under a formula consisting of three factors estimated by the Secretary. 42 U.S.C. § 1395ww(r)(2). There is also no way to review the Secretary's method of estimation without reviewing the estimate itself. DCH's complaint confirms this point. It seeks both vacatur of "the Secretary's Fiscal Year 2014 Factor 3 calculation for Plaintiff" and an order compelling the Secretary "to recalculate the Fiscal Year 2014 disproportionate share adjustment owed to Plaintiff." J.A. 20. This attacks the estimate used to calculate a DSH additional payment.

Moreover, DCH's proposed distinction between methodology and estimates would eviscerate the statutory bar, for almost any challenge to an estimate could be recast as a challenge to its underlying methodology. For example, all the determinations made in the FY 2014 Rule, *see* 78 Fed. Reg. at 50,627–47, or in any of its successor rules, are fairly described as methodological. So, the only unreviewable estimates would be ones turning on how to apply these elaborate rules in individual cases. Such a line might make sense if Congress had required the Secretary to formulate a methodology for calculating DSH additional payments by rule, and then foreclosed judicial review only of adjudications applying the

rule to specific hospitals. But here, Congress has foreclosed review of "[a]ny estimate" used by the Secretary "for purposes of determining the factors" bearing on DSH additional payments. 42 U.S.C. § 1395ww(r)(3)(A). Many of the relevant estimates involve determinations that do not vary from hospital to hospital—and thus are sensibly made by rule. For example, the first statutory factor turns on "the aggregate amount of payments" that would have been made to all disproportionate share hospitals under a prior version of the statute, "as estimated by the Secretary." *Id.* § 1395ww(r)(2)(A). The second factor turns on the "percent change" of uninsured individuals under 65 years old nationwide, "as calculated by the Secretary" for fiscal years 2014 to 2017, and on the "percent change" of all uninsured individuals nationwide, "as estimated by the Secretary" in each subsequent fiscal year. *Id.* § 1395ww(r)(2)(B). The third factor turns on each individual hospital's share of uninsured care, measured relative to a denominator of "the aggregate amount of uncompensated care" provided by all disproportionate share hospitals, "as estimated by the Secretary." *Id.* § 1395ww(r)(2)(C). Under this statutory structure, which plainly bars review of estimates made across-the-board and by rule, estimates cannot be separated from the methodology used to generate them.

Our decision in *Florida Health Sciences Center, Inc. v. Secretary of HHS*, 830 F.3d 515 (D.C. Cir. 2016), reinforces this analysis. There, we held that section 1395ww(r)(3)(A) bars judicial review of the choice of data used to estimate a hospital's amount of uncompensated care. We rejected the argument that "an 'estimate' is not the same thing as the 'data' on which it is based." *Id.* at 519. Instead, we held that, because the selection of data used to make estimates is "inextricably intertwined" with the estimates themselves, the bar on judicial review applies to both. *Id.* at 521. That reasoning governs this

case, for the methodology used to generate estimates is no less "inextricably intertwined" with the estimates. In particular, the decision held unreviewable in *Florida Health*—to exclude from the 2014 estimates any data submitted after March 2013—is a methodological choice as well as a data choice. Indeed, both the Secretary and this Court described it as such. *See id.* at 517 ("methodology for calculating DSH payments"); *FY 2014 Rule*, 78 Fed. Reg. at 50,634 ("Methodology to Calculate Factor 3").

If anything, the case for preclusion is even stronger here than in *Florida Health*. The governing statute speaks of uncompensated care "as estimated by the Secretary, based on appropriate data." 42 U.S.C. § 1395ww(r)(2)(C)(i). So, it provides at least some textual basis for considering whether estimates can be separated from their underlying data. But the statute makes no reference to "methodology" as such—and thus provides no textual basis for separating estimates from their underlying methodology.

In construing other Medicare provisions barring judicial review, we have employed similar reasoning. For example, in *Texas Alliance for Home Care Services v. Sebelius*, 681 F.3d 402 (D.C. Cir. 2012), we construed a statute that bars review of "the awarding of contracts" to cover challenges to a regulation setting forth financial eligibility standards, which we described as "indispensable to 'the awarding of contracts.'" *Id.* at 409. Likewise, we construed a provision barring review of "the bidding structure and number of contractors selected" to cover the same eligibility regulation, which we described as "inextricably intertwined with the bidding structure." *Id.* at 411. Most recently, we held that a statute barring judicial review of "prospective payment rates" covers "adjustments used to calculate th[ose] rate[s]." *Mercy Hosp., Inc. v. Azar*, 891 F.3d 1062, 1066 (D.C. Cir. 2018). Citing *Florida Health*,

we reasoned that the adjustments were "inextricably intertwined" with the rates. *Id.* at 1066–67 ("Because reviewing a formula used by the prospective payment rate would effectively review the rate itself, we cannot review the former if we cannot review the latter."). These decisions confirm our analysis above: We cannot review the Secretary's method of estimation without also reviewing the estimate. And because the two are inextricably intertwined, section 1395ww(r)(3)(A) precludes review of both.

B

To support its argument for jurisdiction, DCH invokes *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), and *ParkView Medical Associates v. Shalala*, 158 F.3d 146 (D.C. Cir. 1998). Neither case is apposite.

*McNary* involved a provision that barred district-court review of any "determination respecting an application for adjustment of status" of certain alien farmworkers. 498 U.S. at 486 n.6. The Supreme Court held that this provision did not bar a class action asserting due-process challenges to the procedures used by the agency to adjudicate individual adjustment decisions. The Court reasoned that the preclusion provision covered only "a single act rather than a group of decisions or a practice or procedure employed in making decisions." *Id.* at 491–92.

*McNary* is inapplicable here. For one thing, the preclusion provision there covered only decisions made through adjudicatory determinations about individual applications. Here, by contrast, the preclusion provision covers "[a]ny estimate of the Secretary for purposes of determining" DSH additional payments. 42 U.S.C. § 1395ww(r)(3)(A). As explained above, this text suggests, and statutory context confirms, that the provision covers broad estimates made by

rule, as well as individualized estimates made by adjudication. Moreover, the relief sought in *McNary*—greater agency process—would not have had "the practical effect of also deciding th[e] claims for benefits on the merits." *Fornaro v. James*, 416 F.3d 63, 68 (D.C. Cir. 2005) (quoting *McNary*, 498 U.S. at 495). Here, by contrast, DCH seeks to attack the very estimates that the preclusion provision insulates from review. Finally, this case involves only statutory claims, so we may apply the preclusion provision without straining to avoid the "serious constitutional question" that would arise from denying judicial review of constitutional claims. *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 681 n.12 (1986) (quotation marks omitted).

*ParkView* is similarly inapplicable. That case involved a provision barring review of "[t]he decision of the Secretary" about whether to reclassify a hospital, for Medicare reimbursement purposes, from rural to urban. 158 F.3d at 147–48. The Court held that "this bar leaves hospitals free to challenge the general rules leading to denial" of reclassification, *id.* at 148, and it went on to conclude that regulations governing the choice of data for reclassification decisions were not arbitrary and capricious, *id.* at 148–49. As in *McNary*, the preclusion provision in *ParkView* targeted only a particular kind of adjudicatory decision, rather than any estimate used to make the decision.

Moreover, *ParkView* has been twice limited, in a way that creates a second dispositive distinction. First, in addressing the preclusion provision at issue there, we clarified that "when a procedure is challenged solely in order to reverse an individual reclassification decision, judicial review is not permitted." *Palisades Gen. Hosp. Inc. v. Leavitt*, 426 F.3d 400, 405 (D.C. Cir. 2005). In other words, *ParkView* is "inapplicable … where the hospital's challenge is no more than an attempt to undo an

individual [decision]." *Id.* Later, in *Florida Health*, we extended that reasoning to the preclusion provision at issue here. We held that section 1395ww(r)(3) barred review because the plaintiff was "simply trying to undo the Secretary's estimate of the hospital's uncompensated care by recasting its challenge to the Secretary's choice of data as an attack on the general rules leading to her estimate." 830 F.3d at 522.

That principle governs this case. As explained above, DCH is simply trying to undo the Secretary's estimate of its uncompensated care by recasting its challenge to that estimate as an attack on the underlying methodology. Indeed, DCH is trying to do so explicitly, in seeking vacatur of the calculation of its own DSH additional payment for fiscal year 2014 and an order requiring the Secretary to recalculate it. For these reasons, *Florida Health*—not *Parkview*—controls here.

III

DCH further argues that even if the statutory bar on judicial review applies, the district court still should have set aside the calculation of its DSH additional payment as *ultra vires*. According to DCH, the district court could have done so because the Secretary, in making the calculation, failed to choose appropriate data. DCH is mistaken.

The doctrine invoked by DCH traces to *Leedom v. Kyne*, 358 U.S. 184 (1958). That case involved section 9(b)(1) of the National Labor Relations Act, which provides that the National Labor Relations Board "shall not" certify a bargaining unit including professionals and other employees "unless a majority of such professional employees vote for inclusion in such unit." 29 U.S.C. § 159(b)(1). The Board had done just that, and the Supreme Court described its action as one "made in excess of its delegated powers and contrary to a specific prohibition in the Act." 358 U.S. at 188. The Court further held that the

district court had jurisdiction to set aside this unlawful agency action. That question arose because the NLRA permits court-of-appeals review of any "final order of the Board," 29 U.S.C. § 160(f), a term that the Court had construed not to encompass certification orders, *see Am. Fed'n of Labor v. NLRB*, 308 U.S. 401 (1940). The Court held that this specific-review scheme did not oust the district court of jurisdiction under 28 U.S.C. § 1337, which otherwise applied. *See* 358 U.S. at 187, 191.

In *Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.*, 502 U.S. 32 (1991), the Supreme Court cautioned against overreading *Kyne*'s jurisdictional holding. A court of appeals had read *Kyne* "as authorizing judicial review of any agency action that is alleged to have exceeded the agency's statutory authority," but the Supreme Court disagreed. *Id.* at 43. The Court stressed that, in *Kyne*, the putative bar on district-court review was "implied" from the "silence" of a statute permitting review in the courts of appeals. *Id.* at 44. The Court further described *Kyne* as merely standing for the "familiar proposition" that judicial review is presumed to be available absent a clear statute to the contrary. *Id.* And it distinguished *Kyne* because the statute at issue in *MCorp* barred judicial review "clearly and directly." *Id.*

Following *MCorp*, there is not much room to contend that courts may disregard statutory bars on judicial review just because the underlying merits seem obvious. This Court has stated that such an argument "is essentially a Hail Mary pass—and in court as in football, the attempt rarely succeeds." *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009). Other decisions confirm that *Kyne*, if construed to permit this kind of backdoor review, has "very limited scope." *DOJ v. FLRA*, 981 F.2d 1339, 1342 (D.C. Cir. 1993); *see also Griffith v. FLRA*, 842 F.2d 487, 493 (D.C. Cir. 1988) ("extremely limited scope"); *Hartz Mountain Corp. v.*

*Dotson*, 727 F.2d 1308, 1312 (D.C. Cir. 1984) ("extraordinarily narrow"). At most, such a "*Kyne* exception" applies only when three requirements are met: "(i) the statutory preclusion of review is implied rather than express; (ii) there is no alternative procedure for review of the statutory claim; and (iii) the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *Nyunt*, 589 F.3d at 449 (cleaned up). The third requirement covers only "extreme" agency error, not merely "[g]arden-variety errors of law or fact." *Griffith*, 842 F.2d at 493.

DCH fails to satisfy the first or third of these requirements. Here, the bar on judicial review is express. Moreover, DCH fails to allege any obvious violation of a clear statutory command. To the contrary, it invokes only the requirement that the Secretary, in calculating the DSH additional payment, must choose "appropriate data." 42 U.S.C. § 1395ww(r)(2)(C). DCH makes no attempt to explain why the Secretary's treatment of hospital mergers violates this open-ended provision at all, much less obviously so. Instead, DCH argues only that the Secretary treats hospital mergers differently in different contexts and that, in calculating DSH additional payments, the Secretary treated hospital mergers differently in fiscal years 2014 and 2015. At most, that suggests that the 2014 treatment may have been arbitrary and capricious. And even that point is debatable, for the Secretary, in discussing the choice of data for the 2014 payment calculations, suggested possible administrability problems with the rule urged by DCH. *See* 78 Fed. Reg. at 50,642. Whatever the merits of DCH's objection, it is worlds apart from the obvious violation of the clear statutory command at issue in *Kyne*.

DCH claims support from *Southwest Airlines Co. v. TSA*, 554 F.3d 1065 (D.C. Cir. 2009), and *COMSAT Corp. v. FCC*, 114 F.3d 223 (D.C. Cir. 1997), but those cases are off-point.

They permitted review not because an obvious legal error justified disregarding an applicable statutory bar, but because the relevant statutory bar, in the circumstances of each case, was effectively coextensive with the merits. The same agency error thus simultaneously made the jurisdictional bar "inapplicable" and compelled setting aside the challenged agency action. *See COMSAT*, 114 F.3d at 227 (statutory bar "merges consideration" of jurisdiction and merits); *Sw. Airlines*, 554 F.3d at 1071 (following *COMSAT*). Moreover, even if these cases did support a *Kyne* exception, each involved a far more obvious legal error than anything arguably present here. In *COMSAT*, the agency was authorized to collect fees only for "rulemaking proceedings or changes in law," yet it sought to collect fees for concededly different activities. 114 F.3d at 225. Likewise, in *Southwest Airlines*, the agency was authorized to collect certain fees only for screening "passengers and property," yet it sought to collect those fees for screening non-passengers. 554 F.3d at 1070–71. Nothing remotely analogous is present here.

## IV

For these reasons, the district court correctly concluded that section 1395ww(r)(3) bars judicial review in this case.

*Affirmed.*