# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 22, 2022   Decided March 10, 2023

No. 21-5246

ASCENSION BORGESS HOSPITAL, ET AL.,
APPELLANTS

v.

XAVIER BECERRA, SECRETARY OF THE UNITED STATES
DEPARTMENT OF HEALTH AND HUMAN SERVICES,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cv-00139)

———

*Andrew B. Howk* argued the cause for appellants. With him on the briefs was *N. Kent Smith*.

*Caroline D. Lopez*, Attorney, U.S. Department of Justice, argued the cause for appellee Xavier Becerra. With her on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Abby C. Wright*, Attorney, U.S. Department of Health and Human Services, *Janice L. Hoffman*, Associate General Counsel, *Susan Maxson Lyons*, Deputy Associate General Counsel for Litigation, and *Jonathan C. Brumer*, Attorney.

Before: PILLARD, *Circuit Judge*, and EDWARDS and ROGERS, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* ROGERS.

ROGERS, *Senior Circuit Judge*: Ascension Borgess Hospital and forty-four other hospitals appeal the grant of summary judgment to the Secretary of the U.S. Department of Health and Human Services ("HHS") dismissing challenges of certain reimbursements for uncompensated care. The Hospitals challenged the "disproportionate share hospital" ("DSH") payments. The Provider Reimbursement Review Board ("PRRB") dismissed the complaint for lack of jurisdiction pursuant to the statutory bar on administrative and judicial review of challenges to the methodology for calculating those payments. *See* 42 U.S.C. § 1395ww(r)(3). The Hospitals contend that HHS was required to promulgate its audit instructions by notice and comment rulemaking before using audited data from each hospital's Worksheet S-10 to estimate the Hospitals' proportionate shares of the national total of uncompensated care. *See id.* § 1395ww(r)(2)(C). They maintain that they do not challenge the Secretary's estimate, but seek only an order directing fulfillment of HHS's notice and comment obligations. For the following reasons, the court affirms the grant of summary judgment to the Secretary.

## I.

In addition to reimbursements that hospitals receive pursuant to the Medicare Act, hospitals serving a disproportionate share of low-income patients may receive additional Medicare payments, known as "DSH payments." *Id.* § 1395ww(d)(5)(F)(i)(I).

The statutory formula provides that eligible hospitals receive an "empirically justified DSH payment" equal to 25% of the amount the hospital would have received but for the passage of the Affordable Care Act ("the ACA"). *Id.* § 1395ww(r)(1). The remaining portion of the DSH payment is referred to as the "uncompensated care" payment, *id.* § 1395ww(r)(2), which is determined based on the Secretary's estimates of three factors: (1) what the DSH payment would have been prior to the amendment of the ACA; (2) the decrease in the national uninsured rate since 2013 (following enactment of the ACA); and (3) each eligible hospital's *pro rata* share of all nationwide uncompensated care for a fiscal year. *See id.* § 1395ww(r)(2)(A)-(C). That *pro rata* share of nationwide uncompensated care is represented by the Secretary's estimate of the hospital's provided amount of uncompensated care, "for a period selected by the Secretary," and "based on appropriate data," divided by the Secretary's estimate of the total amount of uncompensated care nationwide. *See id.* § 1395ww(r)(2)(C).

Since 2013, HHS has proposed and adopted the methodology for calculating the estimates underlying the following year's uncompensated care through rulemaking. *See, e.g.*, 78 Fed. Reg. 50,496 (Aug. 19, 2013); 84 Fed. Reg. 42,044 (Aug. 16, 2019). Notice and comment rulemaking is required for any "rule, requirement, or other statement of policy" that "establishes or changes a substantive legal standard governing . . . the payment for services." 42 U.S.C. § 1395hh(a)(2); *see Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1810 (2019).

To estimate the third factor in the uncompensated care payment for fiscal year 2020, HHS relied for the first time on data from the 2015 Worksheet S-10 cost reports each Hospital was required to submit to HHS. 84 Fed. Reg. at 42,364. By

notice and comment rulemaking, the Secretary proposed to use a subset of Worksheet S-10 data on the volume and value of uncompensated care provided to low-income patients as the basis for the *pro rata* share estimates. *See id.* at 19,158, 19,419 (proposed May 3, 2019). The Secretary also developed "more uniform review protocols" for Medicare contractors to audit Worksheet S-10 data for accuracy. 81 Fed. Reg. 56,762, 56,963–64 (Aug. 22, 2016). The Worksheet S-10 data that the Secretary proposed to use to calculate the 2020 DSH payments included data updated by Medicare contractors as a result of these audits, 84 Fed. Reg. at 19,419, and the Secretary noted that any audit protocols would remain confidential, 81 Fed. Reg. at 56,964.

In Federal Register notices, the Secretary observed that "Worksheet S-10 could potentially provide the most complete data for Medicare hospitals" because it was "developed specifically to collect information on uncompensated care costs" from each Medicare hospital. 78 Fed. Reg. at 50,635; *see also* 84 Fed. Reg. at 19,417–18. Upon considering comments on use of Worksheet S-10 data and audit procedures, the Secretary concluded that the data subset represented the most "appropriate data," 42 U.S.C. § 1395ww(r)(2)(C)(ii), on which to base the uncompensated care estimates and, in turn, the payments for fiscal year 2020, 84 Fed. Reg. at 42,364–66. By amendment to the Affordable Care Act in 2014, Congress specified:

> There shall be no administrative or judicial review under section 1395ff of this title, section 1395*oo* of this title, or otherwise of . . . [a]ny estimate of the Secretary for purposes of determining the factors described in paragraph (2)[; or] [a]ny period selected by the Secretary for such purposes.

42 U.S.C. § 1395ww(r)(3).

## II.

Relying on the Supreme Court's ruling in *Allina Health*, 139 S. Ct. 1804, the Hospitals contend that the Secretary was required to promulgate the audit instructions by notice and comment rulemaking before using audited Worksheet S-10 data to estimate the Hospitals' proportionate shares of the national total uncompensated care under section 1395ww(r)(2)(C). *See id*. at 1810. Although the Secretary's proposed estimation methodology was subject to notice and comment, *see* 84 Fed. Reg. at 19,419; *id.* at 42,364–68, the audit protocol itself was not.

After the PRRB determined that the statutory bar, 42 U.S.C. § 1395ww(r)(3), deprived it of jurisdiction over the challenge, the district court granted summary judgment to the Secretary because the Hospitals' attempts to evade the statutory bar were foreclosed by *DCH Regional Medical Center v. Azar*, 925 F.3d 503 (D.C. Cir. 2019), and *Florida Health Sciences Center, Inc. v. Secretary of HHS*, 830 F.3d 515 (D.C. Cir. 2016). This court conducts a *de novo* review of the grant of summary judgment, *Am. Clinical Lab'y Ass'n v. Becerra*, 40 F.4th 616, 621 (D.C. Cir. 2022); *Am. Hosp. Ass'n v. Azar*, 895 F.3d 822, 825 (D.C. Cir. 2018), considering whether the data on which the Secretary relied is "inextricably intertwined" with the Secretary's uncompensated care estimates in calculating DSH payments, *DCH*, 925 F.3d at 506–07.

In *Florida Health*, 830 F.3d 515, the court rejected the hospital's position that the Secretary's use of 2010-2011 data to calculate DSH payments for the 2014 fiscal year violated the Administrative Procedure Act and the Medicare Act. *See id.* at 519. Looking to the text of section 1395ww(r)(3), the court

concluded it constituted a "reliable indicator" of Congress's intent to bar such review, *see id.* at 518, reasoning that the Secretary's estimate and the data underlying it were indistinguishable because the data was an integral component of the estimate itself, review of which was barred. *Id.* at 518–19. Because "[t]he data are the entire basis for the estimate," *id.*, a challenge to that data would "eviscerate the bar on judicial review," *id.* (citing *El Paso Nat. Gas Co. v. United States*, 632 F.3d 1272, 1278 (D.C. Cir. 2011)).

Similarly, in *DCH Regional*, the court rejected the challenge to the Secretary's calculation of a hospital's DSH payment following a merger that did not incorporate data from the acquired hospital. The court reiterated that under the Medicare Act's statutory scheme, "a challenge to the methodology for estimating uncompensated care is unavoidably a challenge to the estimates themselves." *DCH*, 925 F.3d at 506.

The Hospitals here similarly would challenge the Secretary's methodology in order to reach the substantive estimate barred from review. They seek vacatur and recalculation of the DSH payments on the theory that the Secretary's audit protocol was procedurally defective. *See Ascension Borgess Hosp. v. Becerra*, 557 F. Supp. 3d 122, 127 (D.D.C. 2021). Yet the Hospitals' framing of their challenge as purely procedural under the Medicare Act's notice and comment requirement does not save their appeal, notwithstanding the "strong presumption in favor of judicial review of final agency action." *Am. Hosp. Ass'n v. Becerra*, 142 S. Ct. 1896, 1902 (2022). That presumption "'may be overcome by,' *inter alia*, 'specific language . . . that is a reliable indicator of congressional intent' . . . to preclude judicial review." *Bowen v. Mich. Acad. of Fam. Physicians*,

476 U.S. 667, 673 (1986) (citing *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984)).

Even if, as the Hospitals contend, the alleged procedural violation is reviewable, the Hospitals have failed to identify any standard required to be set by rule that was not. Although neither *DCH* nor *Florida Health* addresses whether notice and comment rulemaking is required for protocols or procedures used to modify providers' raw uncompensated care data before calculating DSH payment estimates, routine audit instructions to Medicare contractors ordinarily fall outside of section 1395hh's rulemaking requirement. *See Clarian Health W., LLC v. Hargan*, 878 F.3d 346, 354–56 (D.C. Cir. 2019); *Texas All. for Home Care Servs. v. Sebelius*, 681 F.3d 402, 411 (D.C. Cir. 2012). The Medicare Act requires notice and comment rulemaking for any "rule, requirement, or other statement of policy" that "establishes or changes a *substantive* legal standard governing . . . the payment for services." 42 U.S.C. § 1395hh(a)(2) (emphasis added); *see also Allina Health*, 139 S. Ct. at 1810. In *Clarian*, 878 F.3d 346, the hospital challenged Medicare "manual instructions" that had not undergone notice and comment prior to promulgation, and the court ruled that although the instructions govern the payment of services, they did not "establish[] or change[] a substantive legal standard." *Id.* at 351, 354 (quoting 42 U.S.C. § 1395hh(a)(2)). The Medicare Act did not require HHS to promulgate the instructions by regulation. *Id.* at 356. Likewise, here, the Secretary's audit protocol does not constitute a "rule" or "requirement" that changes a *substantive legal standard*, but is a statement of policy regarding the Secretary's procedural methodology. The audit protocol neither alters the Hospitals' substantive obligations nor changes the DSH payment calculation scheme. It only sets the procedures by which the Secretary will determine the third factor of the uncompensated

care payment, without altering the substance of the DSH calculation scheme or other related legal standards.

Finally, the Hospitals forfeited their argument, raised for the first time at oral argument on appeal to this court, that HHS inserted a new and unannounced definition of "uncompensated costs" into the undisclosed audit protocol that should have been subject to notice and comment. Because the Hospitals failed to make "timely assertion" of their right to bring that challenge, the court cannot now consider it. *United States v. Olano*, 507 U.S. 725, 731, 733 (1993); *Nemariam v. Fed. Dem. Rep. Eth.*, 491 F.3d 470, 483 (D.C. Cir. 2007).

Accordingly, the court affirms the grant of summary judgment to the Secretary.