# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 23, 2025

Lyle W. Cayce
Clerk

———————

No. 24-10384

———————

U.S. Anesthesia Partners of Texas, P.A.; U.S. Anesthesia Partners of Florida, Incorporated; U.S. Anesthesia Partners of Colorado, Incorporated; Physicians Anesthesia Service, P.L.L.C.,

*Plaintiffs—Appellants*,

*versus*

United States Department of Health and Human Services; United States Centers for Medicare and Medicaid Services; Dorothy Fink, *Acting Secretary, U.S. Department of Health and Human Services, in her official capacity as Acting Secretary, U.S. Department of Health and Human Services*; Chiquita Brooks-Lasure, *in her official capacity as Administrator of* Centers for Medicare and Medicaid Services,

*Defendants—Appellees*.

———————————————————

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:23-CV-206

———————————————————

Before Davis, Graves, and Wilson, *Circuit Judges*.

Cory T. Wilson, *Circuit Judge*:

A group of anesthesiology specialty medical practices sued the Department of Health and Human Services (HHS) and the Centers for

Medicare & Medicaid Services (CMS) to challenge the Merit-based Incentive Payment System (MIPS), which evaluates eligible clinicians across several performance categories and accordingly adjusts their Medicare reimbursement rates. After receiving unfavorable MIPS scores, Plaintiffs asserted that the Total Per Capita Cost (TPCC) measure, one of MIPS's performance metrics, was arbitrary and capricious as applied to them. The district court concluded that Plaintiffs' suit was statutorily barred. We agree and affirm the district court's dismissal of Plaintiffs' claims.

## I.

This case involves a complex Medicare-reimbursement regulatory scheme. 42 U.S.C. § 1395w-4 *et seq.* So it is useful to start with an overview of (A) MIPS, (B) the TPCC measure, and (C) the TPCC measure's "attribution methodology" that Plaintiffs challenge.

## A.

The Medicare statute directs the Secretary of HHS to "establish an eligible professional Merit-based Incentive Payment System" and to "develop a methodology for assessing the total performance of each MIPS eligible professional." *Id.* § 1395w-4(q)(1)(A)(i). More specifically, CMS is tasked with developing MIPS as part of its administration of the Medicare program. Designed to "drive improvement in care processes and health outcomes, increase the use of healthcare information, and reduce the cost of care," MIPS adjusts Medicare part B reimbursement rates payable to a clinician based on various performance metrics. CMS, *Traditional MIPS Overview*, Quality Payment Program, https://qpp.cms.gov/mips/traditional-mips (last visited Jan. 13, 2025).

The governing statutory scheme outlines four performance categories on which a clinician's MIPS score is based: (1) "[q]uality," (2) "[r]esource use" (i.e., cost), (3) "[c]linical practice improvement activities," and

(4) "[m]eaningful use of certified [electronic health record] technology." 42 U.S.C. § 1395w-4(q)(2)(A). A clinician's performance across these categories results in a composite MIPS final score, which can directly affect his or her pocketbook. A higher score results in an upward adjustment to the clinician's reimbursement rate, while a lower one may lead to a downward adjustment. 42 C.F.R. § 414.1405(b) (2025). Eligible clinicians have the option to participate in MIPS as a group and receive a single score based on the group's combined performance assessment. *Id.* § 414.1310(e).

This case centers on the "cost" category. Specifically, 42 U.S.C. § 1395w-4(q)(2)(B)(ii) delimits "measures and activities" for calculating the cost category, namely, "the measurement of resource use for such period under subsection (p)(3), using the methodology under subsection (r) as appropriate, . . . accounting for the cost of drugs under [Medicare] part D." Subsections (p)(3) and (r), in turn, flesh out how CMS is to establish those "measures and activities." Subsection (p)(3) states that the cost category is evaluated "based on a composite of appropriate measures of costs established by the Secretary." 42 U.S.C. § 1395w-4(p)(3). And subsection (r) directs the Secretary to undertake various steps to "involve the physician, practitioner, and other stakeholder communities in enhancing the infrastructure for resource use measurement." *Id.* § 1395w-4(r)(1). Pertinent to this case, one of the paragraphs in subsection (r) details the steps CMS must follow to "facilitate the attribution of patients . . . to one or more physicians." *Id.* § 1395w-4(r)(3)(A).

## B.

CMS created the Total Per Capita Cost (TPCC) measure as one of the "appropriate measures of costs" under § 1395w-4(p)(3). *See* 42 C.F.R. § 414.1350(a) ("For purposes of assessing performance of MIPS eligible clinicians on the cost performance category, CMS specifies cost measures for

a performance period.").   CMS describes the TPCC measure as a "payment-standardized, risk-adjusted, and specialty-adjusted measure" that assesses "the overall cost of care delivered to a patient with a focus on the primary care they receive from their providers," with a goal of promoting cost-effectiveness.   CMS, Merit-Based Incentive Payment System (MIPS): Total Per Capita Cost (TPCC) Measure 3 (2022) [hereinafter CMS, TPCC Information Form], https://qpp.cms.gov/docs/cost_specifications/2022-12-02-mif-tpcc.pdf.

In evaluating MIPS eligible clinicians, the TPCC measure "attributes" a patient's cost of care to clinicians who have billed qualifying primary care services for that patient. *Id.* This requires CMS to develop an "attribution methodology" for the TPCC measure that assigns a patient's costs to the proper clinicians, i.e., those who have actual control over the costs. Otherwise, it would undermine the efficacy of the TPCC to "attribute beneficiaries to a clinician not responsible for the beneficiaries' primary care." CY 2020 Updates to the Quality Payment Program, 84 Fed. Reg. 62,945, 62,969 (Nov. 15, 2019).

In 2019, responding to the concern that the existing attribution methodology "assigned costs to clinicians over which the clinician ha[d] no influence," CMS modified the TPCC measure to exclude clinicians in certain specialty practice groups—including anesthesiologists—who were generally deemed not responsible for a patient's primary care. *Id.* at 62,969–73. However, CMS chose to continue to include physician assistants and nurse practitioners working for such specialty practices. *Id.* Somewhat delayed by the COVID-19 pandemic, the new version of the TPCC measure took effect in 2022.

## C.

Plaintiffs are Medicare-participating anesthesiology practices. Generally, their anesthesiologist members are excluded from the revised TPCC measure. But Plaintiffs also employ covered non-physician clinicians, including physician assistants and nurse practitioners, who provide patient care as part of Plaintiffs' practices.

During the 2022 performance period, in accordance with CMS's attribution methodology, Plaintiffs' non-physician employees were included in the TPCC measure. Because Plaintiffs chose to be assessed at the group level, the costs that were attributed to their physician assistants and nurse practitioners were attributed to the practices as a whole. Plaintiffs' resulting scores in the cost category negatively affected their overall MIPS scores, such that Plaintiffs allegedly face about $2.4 million in reimbursement cuts, instead of the $1.4 million increase they had expected to receive—a net $3.8 million loss.

In September 2023, Plaintiffs contested their MIPS scores by submitting targeted review requests to CMS under 42 U.S.C. § 1395w-4(q)(13)(A), which allows "a MIPS eligible professional [to] seek an informal review of the calculation of the MIPS adjustment factor." Plaintiffs asserted that CMS misinterpreted its MIPS rules by applying the TPCC measure to their anesthesiology practices based on their few non-physician employees. CMS denied Plaintiffs' targeted review requests.

In December 2023, Plaintiffs filed this action against HHS and CMS on the premise that "the TPCC attribution methodology exceeds Defendants' statutory authority and is arbitrary and capricious as applied to

Plaintiffs."[1]  The district court granted summary judgment for Defendants, concluding that 42 U.S.C. §§ 1395w-4(q)(13)(B)(iii) and (p)(10)(C) preclude judicial review of Plaintiffs' claims.  The district court also determined that even if Plaintiffs' claims were justiciable, CMS did not exceed its statutory authority in establishing the TPCC measure and its attribution methodology, and that the TPCC measure, as applied to Plaintiffs, was not arbitrary or capricious.

Plaintiffs appealed.  In this court, they challenge the TPCC measure on the grounds that:  (1) the statute does not preclude judicial review of Plaintiffs' challenge to the attribution methodology, (2) CMS exceeded its statutory authority in establishing the attribution methodology, and (3) the TPCC measure as applied to them is arbitrary and capricious.  Like the district court, we conclude that we lack jurisdiction to review Plaintiffs' challenge to the TPCC measure.  Accordingly, we affirm on that basis and do not address the merits of Plaintiffs' claims.

## II.

The district court's dismissal for lack of subject matter jurisdiction is reviewed *de novo*.  *Flores v. Garland*, 72 F.4th 85, 88 (5th Cir. 2023).  Though there is a "strong presumption" favoring judicial review of administrative actions, the presumption can be rebutted by the pertinent statute's language or structure.  *Mach Mining, LLC v. E.E.O.C.*, 575 U.S. 480, 486 (2015).

### A.

The district court ruled that Plaintiffs' challenge to the attribution methodology was barred by § 1395w-4(q)(13)(B)(iii), which states:

---

[1] Plaintiffs also asserted that the TPCC measure is an excessive fine in violation of the Eighth Amendment, but they have since abandoned this claim.

> Except as provided for in subparagraph (A) [i.e., the targeted review process], there shall be no administrative or judicial review . . . of the following: . . . The identification of measures and activities specified under paragraph (2)(B) . . . .

"[P]aragraph (2)(B)," in turn, delineates "measures and activities" for the cost category of a MIPS score, namely, "the measurement of resource use for such period under subsection (p)(3), using the methodology under subsection (r) as appropriate." 42 U.S.C. § 1395w-4(q)(2)(B)(ii); *see supra* I.A. We agree that § 1395w-4(q)(13)(B)(iii) bars judicial review of Plaintiffs' challenge because CMS's establishment of an attribution methodology for the TPCC measure falls within that section's "identification of measures and activities."

Plaintiffs contend that the district court read the statutory term "identification" too broadly. They draw a distinction between (1) the identification of the TPCC measure and (2) the establishment of its underlying attribution methodology. In other words, Plaintiffs do not purport to dispute CMS's *identification* of the TPCC measure as a way to assess cost under MIPS. Rather, Plaintiffs ostensibly challenge only the component *manner* by which the TPCC measure attributes patients' costs to clinicians.

For statutory support, Plaintiffs emphasize that § 1395w-4(q)(2)(B) —which § 1395w-4(q)(13)(B)(iii) incorporates—also distinguishes between "measurement of resource use" and "methodology." *See* 42 U.S.C. § 1395w-4(q)(2)(B)(ii). Plaintiffs thus reason that their challenge to the attribution methodology, which literally targets a "methodology" and not a "measure," is not barred from review by § 1395w-4(q)(13)(B)(iii).

Plaintiffs' reasoning is unconvincing, for at least two reasons. First, the statutes make it apparent that CMS's determination of an attribution

7

methodology is part of "[t]he identification of measures and activities." Section 1395w-4(q)(13)(B)(iii) bars review of "[t]he identification of *measures and activities* specified under paragraph (2)(B)" (emphasis added). Paragraph (2)(B)—titled "Measures and activities specified for each category"—includes both "measurement of resource use" and "methodology." Based on that interplay, it is difficult to see how the TPCC's attribution methodology somehow falls beyond the "measures and activities" proscribed from judicial review. In other words, Plaintiffs' statutory argument is not supported by the text or structure of the statutes at issue, which simply do not suggest the distinction on which Plaintiffs rely.

Second, Plaintiffs' notional distinction between "identifying a measure" and "establishing its attribution methodology" is both pedantic and illogical. Such a distinction depends on the idea that CMS's "identifying" the TPCC measure is independent of the agency's establishing the measure's calculation methodology, which includes the attribution methodology. Because "identification" is not defined by § 1395w-4, we "construe it in accord with its ordinary or natural meaning." *United States v. Aguilar-Alonzo*, 944 F.3d 544, 550 (5th Cir. 2019) (quoting *Smith v. United States*, 508 U.S. 223, 228 (1993)). "Identification," as relevant for today's case, is "an act of identifying." *Identification*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/identification (last visited Jan. 13, 2025). And to "identify" something is "[t]o ascertain or assert what a thing or who a person is." *Identify*, OXFORD ENGLISH DICTIONARY, https://www.oed.com/dictionary/identify_v?tab=meaning_and_use#9040 34 (last visited Jan. 13, 2025); *see also Identify*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/identify (last visited Jan. 13, 2025) ("to ascertain the identity of (someone or something that is unfamiliar or unknown)").

"Identification" of the TPCC measure, in the MIPS context, necessarily requires "ascertain[ing] or assert[ing]" its calculation *methodology*. Otherwise, CMS has only "identified" an undefined measure. Put differently, without CMS's determining the TPCC measure's components and its calculation methodology, "the TPCC measure" is largely an empty concept. As CMS points out, "[a] cost measure is only meaningful insofar as it enables CMS to evaluate a defined set of costs, and [P]laintiffs challenge the way CMS has defined the set of relevant costs."

The *attribution* of those costs is likewise an essential part of calculating the TPCC measure. *See* CMS, TPCC Information Form at 5 ("There are 2 parts to the TPCC measure calculation: attribution (Steps 1–4) and measure calculation (Steps 5–8)."). If Plaintiffs are correct that all that is barred from review is CMS's decision superficially to "identify" the TPCC measure, then all the components of the TPCC measure would be subject to challenge, not just the attribution methodology. But it makes little sense that Congress would preclude judicial review of CMS's choice to use the TPCC measure, yet allow parties to challenge every step of calculating it.

Thus, Plaintiffs' conceptual distinction is unsupported by either the statutory language or practical logic. Sifting through the TPCC measure's intricate calculation methodology to determine which steps are reviewable— when § 1395w-4(q)(13)(B)(iii) broadly precludes review of "[t]he identification of measures"—is both contrary to Congress's express instructions and rests on an artificial parsing of the TPCC measure's component parts. Moreover, it embodies an approach this court has rejected before. *See Paladin Cmty. Mental Health Ctr. v. Sebelius*, 684 F.3d 527, 533 (5th Cir. 2012) ("The ultimate payment rate is simply the sum of numerous relative payment weights, as adjusted, and a court cannot review or adjust the ultimate payment rate without improperly reviewing or adjusting its

component parts.").[2]   Because § 1395w-4(q)(13)(B)(iii) bars courts from hearing challenges to "[t]he identification of measures," it bars us from reviewing either the TPCC measure or its component parts, e.g., its calculation methodology and attribution of costs.

## B.

The district court also concluded that 42 U.S.C. § 1395w-4(p)(10)(C) bars judicial review of Plaintiffs' claims:

> There shall be no administrative or judicial review . . . of—the evaluation of costs under paragraph (3), including the establishment of appropriate measures of costs under such paragraph[.]

"[P]aragraph (3)" requires that costs "be evaluated, to the extent practicable, based on a composite of appropriate measures of costs established by the Secretary."   42 U.S.C. § 1395w-4(p)(3); *see supra* I.A. This provision, originally part of a different reimbursement framework, the Value-based Payment Modifier program, was expressly carried forward into the MIPS program.  *See* 42 U.S.C. § 1395w-4(p)(3) ("With respect to 2019 and each subsequent year, the Secretary shall, in accordance with subsection (q)(1)(F), carry out this paragraph for purposes of subsection (q).").

---

[2] In its brief, CMS also persuasively catalogues cases from other circuits that have rejected similar attempts to draw distinctions between the sum and its parts. *See, e.g.*, *Am. Soc'y of Cataract & Refractive Surgery v. Thompson*, 279 F.3d 447, 452 (7th Cir. 2002) (finding no judicial review over "relative values" also means no judicial review over the component parts of those values); *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 505–06 (D.C. Cir. 2019) (rejecting the argument that 42 U.S.C. § 1395ww(r)(3)(A), which bars judicial review of "any estimate of the Secretary," does not apply to the "methodology used to make the estimates"); *Fla. Health Scis. Ctr., Inc. v. Sec'y of Health & Hum. Servs.*, 830 F.3d 515, 521 (D.C. Cir. 2016) (similar).

No. 24-10384

Just like § 1395w-4(q)(13)(B)(iii), § 1395w-4(p)(10)(C) demonstrates Congress's intent to bar judicial review of challenges like Plaintiffs'. If anything, § 1395w-4(p)(10)(C) provides a stronger basis for barring review. The "establishment of appropriate measures of costs" plainly encompasses such measures' component parts. Specifically, the Secretary's establishment (via CMS) of the TPCC measure logically requires establishing how the measure is to be calculated, including its attribution methodology. Plaintiffs' effort to carve out the attribution methodology from the TPCC measure in order to gain judicial review is foreclosed by § 1395w-4(p)(10)(C)'s text and its statutory framework.

## C.

There is "a narrow exception to a congressional bar on judicial review for claims that an agency exceeded the scope of its authority or violated a clear statutory mandate." *Paladin Cmty. Mental Health Ctr.*, 684 F.3d at 532 (citing *Leedom v. Kyne*, 358 U.S. 184, 188–89 (1958)). To the extent Plaintiffs' assertion that CMS exceeded its statutory authority by applying the TPCC measure to their practices could be construed as an *ultra vires* claim, we may conduct "a cursory review of the merits of the case to determine whether the Secretary violated a clear statutory mandate." *Id.* (quoting *Hanauer v. Reich*, 82 F.3d 1304, 1309 (4th Cir. 1996)).

Such a claim is plainly meritless. The MIPS statutory framework gives the Secretary broad discretion to establish measures of cost. 42 U.S.C. § 1395w-4(p)(3) ("[C]osts shall be evaluated, to the extent practicable, based on a composite of appropriate measures of costs established by the Secretary . . . ."). Further, the statute's definition of "MIPS eligible professional" includes physicians, physician assistants, nurse practitioners, and "*a group* that includes such professionals." *Id.* § 1395w-4(q)(1)(C) (emphasis added). Based on our "cursory review" of Plaintiffs' claim,

CMS's application of the TPCC measure to Plaintiffs by the virtue of their non-physician employees did not violate a "clear statutory mandate." *Paladin Cmty. Mental Health Ctr.*, 684 F.3d at 532. Thus, to the extent Plaintiffs assert an *ultra vires* claim, it does not resuscitate our jurisdiction to consider the merits of Plaintiffs' case.

## III.

Congress has clearly precluded judicial review of Plaintiffs' challenge to the TPCC measure's attribution methodology. Accordingly, the district court properly dismissed Plaintiffs' claims for lack of jurisdiction. Because we agree with that dispositive holding, we do not reach the merits of Plaintiffs' claims. *See Anderson v. Hutson*, 114 F.4th 408, 418 (5th Cir. 2024).

AFFIRMED.